HERTHA L. LUND
PETER B. TAYLOR
LUND LAW, PLLC
662 S. Ferguson Ave., Unit 2
Bozeman, MT 59718
Telephone: (406) 586-6254
Facsimile: (406) 586-6259
Lund@Lund-Law.com
Taylor@Lund-Law.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| SCOTT AND PAMELA BYE; KOREY AND WENDY FAUQUE; BUTCH AND DOREEN GILLESPIE; WAYNE AND ROXY GILLESPIE, and JOHN DOES 1, 2, 3, 4, <br><br> *Plaintiffs*, <br><br> vs. <br><br> SOMONT OIL COMPANY, INC., <br><br> *Defendant*. | Case No. 4:25-cv-21-GF-BMM <br><br> **SECOND AMENDED AND FIRST SUPPLEMENTAL COMPLAINT AND DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs, Scott and Pamela Bye, Korey and Wendy Fauque,

Butch and Doreen Gillespie, Wayne and Roxy Gillespie, (collectively "Plaintiffs")

by and through their attorneys of record Hertha L. Lund and Peter B. Taylor, both

of Lund Law, PLLC, and complain and allege against Defendant, Somont Oil Company, Inc. ("Somont"), as follows:

## PARTIES

1. All Plaintiffs own property located near Kevin, Montana on which Somont has placed oil production facilities, including earthen evaporation pits or ponds.

2. Somont is a Montana corporation doing business in Toole County, Montana.

3. Somont operates oil production facilities on Plaintiffs' real property in Toole County, under oil and gas leases.

## GENERAL ALLEGATIONS

4. In August of 2019, a Toole County jury in *Stene v. Somont*, DV-16-037, found that Somont failed to comply with Montana law regarding its maintenance of fences around its evaporation pits and found Somont liable to Stene for $697,671.45 in damages.

5. In the *Stene* case, Somont's breach of its duty to maintain a legal fence around one of its earthen evaporation pits allowed a number of the plaintiff's cows to consume oil contaminated water from the evaporation pit, which resulted in a certain number of the plaintiff's cows becoming dying or dying.

6. Somont's evaporation pits hold water that is pumped up from the oil-bearing strata along with oil during the production of oil, which is then separated from the oil at Somont's oil production facilities.

7. Under Montana Law, Somont's evaporation pits are considered part of its production facilities.

8. The water brought up during oil production and then disposed of in Somont's evaporation pits is defined as Produced Water, which can vary significantly in quality.

9. Produced Water means the water (brine) brought up from the hydrocarbon-bearing strata during the extraction of oil and gas, and can include formation water, injection water, and any chemicals added downhole or during the oil/water separation process. 40 CFR 435.11(bb).

10. Produced Water is considered a "pollutant" under the Water Pollution Control Act ("Clean Water Act") and is subject to the United States Environmental Protection Agency's ("EPA") National Pollutant Discharge Elimination System ("NPDES") permitting requirements. *N. Plains Res. Council v. Fid. Expl. & Dev. Co.*, 325 F.3d 1155, 1161 (9th Cir. 2003).

11. Produced Water is subject to both the Montana Water Quality Act and the Clean Water Act no matter what quality it is.

12. All water at issue in this case is Produced Water.

13.     Under authority granted to the Montana Department of Environmental Quality ("DEQ") by the EPA, Produced Water can only be put to beneficial use for livestock and wildlife watering in Montana, and to discharge it for that purpose the oil producer must obtain a Montana Pollutant Discharge Elimination System ("MPDES") permit, which is administered by DEQ as part of EPA's NPDES permitting program.

14.     The NPDES permitting system is one of the corner stones of the the Clean Water Act.

15.     DEQ's MPDES permits for Produced Water discharges are issued under CWA authority set forth in 40 C.F.R. Part 435 Subpart E for beneficial use in agriculture or wildlife propagation.

16.     40 C.F.R. Part 435 Subpart E requires that Produced Water discharged under this type of NPDES permit be of good enough quality to be used in wildlife or livestock watering, and the Produced Water must be put to actual use during periods of discharge.

17.     When issuing an MPDES permit for Produced Water discharge, DEQ requires the Produced Water to meet specific ongoing water quality standards before being discharged for consumption by livestock or wildlife under a MPDES permit.

18.     DEQ recognizes that because of its composition Produced Water cannot be used in land applications such as irrigation because it will damage and ruin land to which it is applied.

19.     Under regulations adopted by the Montana Board of Oil and Gas Conservation ("MBOGC") for the production of oil and gas, Somont may also obtain a permit to store and dispose of Produced Water through evaporation in an earthen evaporation pit or pond ("Evaporation Pit").

20.     Produced Water stored in Somont's Evaporation Pit is considered part of the oil production facility and a discharge, and, therefore, can be of significantly lower quality than Somont is allowed to discharge for beneficial use for livestock and wildlife consumption under an MPDES permit.

21.     To obtain a permit to dispose of Produced Water in an Evaporation Pit, MBOGC requires that Somont construct the Evaporation Pit in such a manner that all Produced Water being generated can be held in the pit or pond until it is evaporated.

22.     Upon information and belief, Somont has obtained permits from MBOGC to construct some or all of the Evaporation Pits at issue in this case that are located on Plaintiffs' property.

23.     Upon information and belief, Somont is required by MBOGC to contain all of its Produced Water in its Evaporation Pits located on Plaintiffs'

property until it is disposed through evaporation, and is not allowed to let Produced run over the top of its Evaporation Pits or otherwise be discharged onto Plaintiffs' adjacent lands.

24.     Somont is only allowed to discharge Produced Water from its production facilities outside of an MBOGC permitted Evaporation Pit, if it obtains an MPDES permit for produced water from DEQ.

25.     Somont currently has only six MPDES Produced Water permits that have been issued by DEQ.

26.     Upon information and belief, Somont has over 300 producing oil wells in Montana, most of which are located in Toole County where Plaintiffs reside.

27.     Upon information and belief, two of Somont's MPDES permits discharge Produced Water over land that is owned or controlled by Plaintiffs.

28.     Upon information and belief, the same two Somont MPDES permits also discharge produced water onto lands owned by the United States Bureau of Land Management ("BLM").

29.     As indicated by data available from EPA's Enforcement and Compliance History Online (ECHO) database, Somont has discharged Produced Water since July of 2022 from its MPDES Swayze permit that is above the safe level for Floride, making it unsuitable for livestock and wildlife to consume.

30.    As indicated by data available EPA's ECHO database, Somont has discharged water in six different quarter since July of 2022 from its MPDES Swayze permit that is above the safe level for Arsenic, making it unsuitable for livestock and wildlife to consume.

31.    Plaintiffs independent testing of the Produced Water from the MPDES Swayze permit confirms that the Produced Water being discharged by Somont has a pH that is too high for it to be safely consumed by livestock or wildlife.

32.    Plaintiffs independent testing of the Produced Water from the MPDES Ellingson permit confirms that the Produced Water being discharged by Somont is too high in Nitrate's for it to be safely consumed by livestock or wildlife.

33.    Plaintiffs independent testing of Somonts' MPDES permitted discharges indicates that the total dissolved solids in the Produced Water being discharged by Somont is above the level that is safe for consumption by wildlife or livestock.

34.    Upon information and belief, Somont has at all times in the past regularly allowed Produced Water to run over the top of its Evaporation Pits without an MPDES discharge permit and flow onto Plaintiffs' adjacent lands in violation of MBOGC's rules.

35.    Upon information and belief, Somont has at all times in the past regularly allowed Produced Water to run over the top of its Evaporation Pits

without an MPDES discharge permit and flow onto adjacent lands owned by the BLM and the state of Montana where Plaintiffs graze their cattle.

36. Somont continues to allow its Produced Water to run out of its evaporation pits without an MPDES permit and flow onto Plaintiffs' lands, down drainages owned by Plaintiffs, and onto lands owned by BLM and the State of Montana where Plaintiffs graze their livestock (hereinafter collectively, "Plaintiffs' Lands") constituting a continuing violation of the MBOGC's permit requirements and a continuing trespass on Plaintiffs' land.

37. By allowing its Produced Water to consistently flow out of its evaporation pits and over and across Plaintiffs' Lands, Plaintiffs' Lands have suffered damage and loss of productivity, damaging Plaintiffs both from loss of grazing capacity and because the composition of the Produced Water is not suitable for Plaintiffs' livestock to consume. These injuries are ongoing and continuous, and not entirely susceptible to quantification. They cannot be remedied by money damages at law alone.

38. Plaintiffs' Lands that Somont's Produced Water has run onto or across, ponded on, and been allowed to infiltrate into and evaporate from, can no longer grow native grasses or now grow native grasses in substantially lower quantities than prior to the infiltration of Somont's Produced Water, as a result of Somont's discharge onto Plaintiffs' lands.

39.     Plaintiffs' Lands that Somont's Produced Water has run onto, ponded on, and been allowed to infiltrate into and evaporate from, is now more suitable for growing weeds than native grasses and has created conditions favorable for a significant amount of weeds to grow thereon, which has increased the prevalence of weeds on Plaintiffs' surrounding lands as well as the likelihood that weeds will continue to propagate therefrom in the future.

40.     Upon information and belief, the Produced Water that Somont has allowed to flow over and across Plaintiffs' Lands has caused continuing irreparable damage to the soils on those lands where the Produced Water ran across, ponded, and was allowed to infiltrate into the soils.

41.     When cattle consume low quality water that it is not suitable for their consumption because of its mineral and/or chemical composition, those cattle suffer impacts to their health and vitality, which can include but are not necessarily limited to loss of fertility, loss of ability to carry a vital fetus all the way until birth, loss of ability to maintain weight in mature cattle, reduced capability to effectively use feed resources, reduced ability to travel distances, lower energy levels, reduced milking capacity, shortened reproductive lifespans, lower birth weights in calves, lower overall conception rates, reduced rate of weight gain for calves and yearlings, long term chronic health impacts, and death.

42.     Plaintiffs' cattle have suffered, and continue to suffer, the above categories of injuries from Somont's discharge of Produced Water on their lands.

43.     These injuries are continuous and ongoing, and not remediable at law.

44.     In November of 2019, Somont sent Bye and other landowners a letter stating that the Court had found Somont liable because it had a fence and that: "Ironically, it was made clear by the Court that since it was our fence, we were responsible to maintain it and that if we did not have a fence in place, we would not have been liable."

45.     Somont's interpretation of the *Stene* decision and Montana law was incorrect, and Somont would have been liable for the damages its Produced Water caused to Stene's cattle no matter what.

46.     Somont went on in the letter to state: "This being the case, we no longer plan to fence our water pits unless legally required to do so under the terms of the lease. Before removing the fences, we are offering them to you with the understanding that if you accept them, they will belong to you and we will have no further responsibility or liability for their maintenance."

47.     Since then, Somont has removed fences from around its evaporation pits.

48.     Somont's removal of fences from around any of its open water discharge pits, pump jacks, gun barrels, oil tanks, and Evaporation Pits presents a

continuous and ongoing clear and present danger of injury and/or death to livestock and/or wildlife.

49.     Removal of the fences from around Somont's Evaporation Pits violates Montana common law, MBOGC's administrative rules, and public policy.

50.     Upon information and belief, Somont's discharge of Produced Water on Plaintiffs' Lands violates state and federal regulations, because the Produced Water never met the water quality parameter for discharge under and MPDES permit or is no longer suitable for permitting under an MPDES produced water permit.

51.     On Oct 4, 2024, Plaintiffs sent Somont, DEQ, EPA, and MBOGC a 60-day Notice of Somont's Violations of the Clean Water Act outlining the CWA claims in this Complaint.

52.     Somont's discharge of water has injured and devalued, and continues to injure and devalue, Plaintiffs' real property. Aerial images depicting damaged land are attached as Exhibit A, incorporated herein by this reference.

## COUNT I – SOMONT'S VIOLATION OF ITS COMMON LAW DUTY TO FENCE ITS EVAPORATION PITS

53.     Plaintiffs reallege all the above allegations.

54.     Pursuant to the prudent operator standard and under the reasonable use and accommodation doctrines governing Somont as the developer of the mineral estate, Somont has a legal duty to fence its open water discharge pits,

pump jacks, gun barrels, oil tanks and/or Evaporation Pits and give Plaintiffs' use of their adjacent lands for livestock grazing due regard.

55.     As established in the *Stene* case, without adequate fencing the open water discharge pits, pump jacks, gun barrels, oil tanks and/or Evaporation Pits are dangerous to landowners' livestock and wildlife.

56.     The damages and injuries sustained by Plaintiffs' cattle and livestock as a result of consuming Somont's Produced Water are not limited to just the instances when cattle die from consuming the Produced Water or drown in the Produced Water Evaporation Pit.

57.     At least as a result of the *Stene* litigation and verdict, as well as through communication with Plaintiffs and prior incidences of livestock dying because of Somont's Evaporation Pits, Somont is aware of the fact that its Produced Water and Produced Water Evaporation Pits present a danger to livestock and wildlife.

58.     Because of Somont's knowledge of the potential danger that consuming Produced Water causes for livestock and wildlife, it is foreseeable that Somont's decision to remove fences from around its evaporation pits will injure or damage Plaintiffs' livestock in some manner.

59.     Somont has the duty to exercise reasonable care to avoid injury in its operations, which includes the duty to fence around its open water discharge pits, pump jacks, gun barrels, oil tanks and Evaporation Pits.

60.     Somont has breached its duties under the prudent operator standard, the reasonable use and accommodation doctrine, and the common law duty of reasonable care by removing the fencing that keeps livestock and wildlife away from its Evaporation Pits and from consuming Somont's Produced Water.

61.     Somont has breached its duties under the prudent operator standard, the reasonable use and accommodation doctrine, and the common law duty of reasonable care by refusing to construct fences to keep livestock and wildlife away from its Evaporation Pits and from consuming Somont's Produced Water stored in its Evaporation Pits.

62.     Somont's recent removal of fencing from its Evaporation Pits allows Plaintiffs' livestock to drink Produced Water that is known to have adverse health impacts on livestock and wildlife.

63.     Somont's refusal to fence its evaporation pits and recent removal of fences from around its evaporation pits has previously caused Plaintiffs to install their own fences around Somont's Produced Water evaporation pits and will make them to do so in the future.

64. Somont has violated its common law duties and, as a result, has injured and continues to cause ongoing injury to, Plaintiffs' livestock, including death and reduction in productivity even if short of death. These injuries are irremediable at law.

65. On or about April 7, 2025, Somont, without notifying the Plaintiff Landowner, installed a new discharge pipe on a lease known as the Alstead lease, and began discharging Produced Water onto Plaintiff's lands without an MBOGC Evaporation Pit permit or a MPDES permit.

## COUNT II – SOMONT'S VIOLATION OF CLEAN WATER ACT

66. Plaintiffs reallege all above allegations.

67. This Court has jurisdiction over Plaintiffs' Clean Water Act claims under the citizen suit provision of the act 33 U.S.C. § 1365(a)(1) and 33 U.S.C. § 1365(f)(7).

68. Somont has violated the narrative standards for Produced Water permits set forth in 40 C.F.R. Part 435 Subpart E by discharging water that is not of good enough quality for cattle or livestock to consume.

69. Somont has violated its MPDES Produced Water permits because the Plaintiff landowners where Somont is discharging its Produced Water do not want to put the Produced Water to beneficial use for watering their livestock when it is being discharged.

70.     Upon information and belief, Somont has also failed to meet the requirements of its MPDES Produced Water permits at issue by regularly failing to comply with the permit's requirement that Somont submit water tests that establish the Produced Water has remained suitable for consumption by livestock or wildlife.

71.     Upon information and belief, Somont has violated its MPDES Produced Water permit by discharging such a large volume of Produced Water that it is discharging Produced Water beyond ephemeral drainages and into a receiving waters of waters of the United States.

72.     Upon information and belief, Somont regularly discharges Produced Water over the top of its Evaporation Pits that do not have an MPDES permit, which may being discharged into receiving waters of the United States, as Somont has only six (6) MPDES permits for Produced Water but regularly discharges produced water over the top of its numerous evaporation pits into drainages falling under the parameters of receiving waters of waters of the United States.

73.     Somont has violated the Clean Water Act by discharging Produced Water from a point source under an MPDES Permit, issued pursuant to federal authority, that is not good enough quality for wildlife or livestock to water onto lands belonging to the BLM in violation of 33 USC § 1321(b)(1).

74.     Somont has violated the Clean Water Act by discharging Produced Water on to BLM lands such that said lands were ruined by the salt content of the produced water being discharged.

## COUNT III – VIOLATION OF MONTANA WATER QUALITY ACT

75.     Plaintiffs reallege all above allegations.

76.     Somont has violated and continues to violate the Montana Water Quality Act by repeatedly discharging Produced Water outside the confines of its MBOGC permitted evaporation pits where it will be consumed by livestock and wildlife without obtaining an MPDES permit to do so.

77.     Somont has violated its existing MPDES permits by discharging water that does not meet the water quality parameters set forth in the permits for wildlife and livestock consumption, including by discharging water that is too high in Floride and Arsenic and with a too high of pH.

78.     Somont has violated its existing MPDES permits because Ranchers have not consented to their livestock consuming the Produced Water, and, therefore, it is not being put to beneficial use during times of discharge.

## COUNT IV – TRESPASS

79.     Plaintiffs reallege all above allegations.

80.    Somont has been knowingly allowing Produced Water to regularly run over and out of its permitted evaporation pits and onto and across Plaintiffs' adjacent lands.

81.    Somont does not have permits that allow it to dispose of Produced Water in this manner from either MBOGC or DEQ.

82.    Somont did not construct its evaporation pits to contain all water being produced during oil production as required by MBOGC's regulations or Somont is producing more water than it indicated to MBOGC and planned for.

83.    Plaintiffs are the legal owners and have rightful possession of the land Somont has been discharging its Produced Water onto.

84.    Plaintiffs have not given Somont permission to discharge Produced Water onto their lands.

85.    By allowing Produced Water to run across Plaintiffs' adjacent lands without permission from Plaintiffs or a discharge permit from DEQ, Somont is committing an unlawful intrusion or invasion upon Plaintiffs' property.

86.    Somont's Produced Water has damaged the soils on Plaintiffs' lands and caused those lands to be less productive than they would be in their natural condition.

87.    Plaintiffs have lost their use of these lands for productive grazing because of Somont's Produced Water discharges.

88.     Somont's Produced Water has caused damage and injury to Plaintiffs' cattle when it was consumed.

89.     Somont's trespass onto Plaintiffs' lands constitutes a continuing tort under Montana law, which Somont could have easily abated at little or no cost but has refused to do.

## COUNT V — NEGLIGENCE

90.     Plaintiffs reallege all above allegations.

91.     Somont owed and owe Plaintiffs a duty to exercise reasonable care when constructing and maintaining its evaporation pits and ponds and to construct and maintain its evaporation pits and ponds such that they were capable of containing all of the water being produced from its oil and gas operations, including any water that may run into the pits and ponds them from the area containing Somont's oil and gas facilities.

92.     Somont owed Plaintiffs a duty to exercise reasonable care when operating its oil and gas facilities such its oil and gas operations and facilities do not produce more Produced Water than its evaporation pits and ponds could hold.

93.     Somont breached its duty to Plaintiffs by failing to construct and maintain evaporation pits and ponds capable of holding all of the Produced Water being produced by its oil and gas operations and facilities.

94.     Somont breached its duty to Plaintiffs by conducting its oil and gas operations and operating its oil and gas facilities in a manner that allowed Produced Water to run out of or over the top of its evaporation pits and ponds and onto Plaintiffs' adjacent lands.

95.     The breaches of duty have caused, and continue to cause, injury to Plaintiffs' lands over which Somont's Produced Water has run and continues to run.

96.     Under the doctrine of *res ipsa loquitur*, the fact that Produced Water has repeatedly flowed out of or overflowed from Somont's evaporation pits and ponds creates an inference that Somont was negligent because (1) the injuries to Plaintiffs' lands were caused by an instrumentality exclusively within Somont's control, (2) the Produced Water could not have repeatedly flowed out of and/or overflowed from Somont's pits and ponds in the absence of Somont's negligence, and (3) Plaintiffs are not and at no time in the past could have been responsible for the damages caused to their real property by the Produced Water running out of or over the top of Somont's evaporation pits and ponds.

97.     Somont's negligence constitutes a continuing tort because:

        a.      Somont has allowed Produced Water to regularly flow onto Plaintiffs' lands for many years causing ongoing harm to Plaintiffs;

b. Somont had actual knowledge that Produced Water was regularly flowing out of or over its evaporation pits and ponds and was causing ongoing damage to Plaintiffs' adjacent lands, but still failed to take any actions to stop the overflows or correct its actions, even though it would have been easy to do so;

c. As a result of Somont's failure to take corrective actions, Plaintiffs have suffered a continuous and worsening injury to their lands, including their ability to produce livestock therefrom.

98. As the direct and proximate result of Somont's ongoing and continuous breach of its duty to Plaintiffs, Plaintiffs have suffered severe injuries to their lands and their ability to produce livestock from those lands has been damaged, including but not limited to loss of ability to graze lands impacted by Produced Water overflows.

## COUNT VI — PERMANENT INJUNCTIVE RELIEF

99. Plaintiffs reallege all above allegations.

100. Somont has removed the protective fencing around its production facilities.

101. Somont is currently discharging and has discharged dirty water in violation of the governing laws.

102.     Somont's failure to fence around its facilities on Plaintiffs' property and its discharge of dirty water onto Plaintiffs' property have caused and are causing irreparable damages to Plaintiffs' real and personal property which cannot be remedied at law.

103.     Somont's continuous injury to Plaintiffs' property will require a multiplicity of lawsuits to remedy if no permanent injunction issues.

104.     Based upon the above allegations, Plaintiffs are entitled to final judgment restraining Somont both from removing the existing fencing around its facilities on Plaintiffs' land, and from discharging dirty water from its facilities onto Plaintiffs' land.  Plaintiffs are also entitled to a permanent restraining order requiring Somont to reconstruct and subsequently maintain in good condition the fences it has removed around its facilities on Plaintiffs' land.

105.     Plaintiffs ask for a permanent injunction.

## COUNT VII – VIOLATION OF SURFACE DAMAGE STATUTES

106.     Plaintiffs reallege all above allegations.

107.     On or about April 7, 2025, Somont placed a new discharge pipe into an existing evaporation pit and began intentionally discharging produced water onto Plaintiff Landowner's land.

108. Pursuant to § 82-10-503, MCA, Somont did not notify landowner before undertaking these actions, did not disclose the plan of work, and did consult with the landowner on the effect of the installation on the use of his property.

109. When installing the unpermitted discharge pipe without notice, Somont did not exercise reasonable care and damaged Plaintiff's lands in the process.

110. Ongoing damage is occurring on Plaintiff's lands from the discharge of produced water from the newly installed pipe.

111. Somont is also responsible for all damages to Plaintiffs lands that are the result of Somont's discharges of Produced Water outside of its Evaporation Pits because those discharges resulted from Somont's lack of ordinary care.

112. Pursuant to § 82-10-505, MCA, Somont, as the oil and gas developer or operator, is responsible for damages to real or personal property caused by oil and gas operations and production.

113. Somont continues to damage Plaintiffs's lands by discharging Produced Water beyond the confines of its Evaporation Pits.

114. Plaintiffs are entitled to compensation from Somont for the damages to their real property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.     Issue a permanent injunction prohibiting Somont from removing any of the existing fencing protecting livestock and wildlife from its open water discharge pits, pump jacks, gun barrels, oil tanks, and Evaporation Pits on Plaintiffs' lands;

B.     Issue a permanent injunction requiring Somont to construct or reconstruct any fencing around its open water discharge pits, pump jacks, gun barrels, oil tanks, or Evaporation Pits on Plaintiffs' lands that Somont has removed since the *Stene* case was decided;

C.     Issue a permanent injunction requiring Somont to maintain in good condition fencing around its open water discharge pits, pump jacks, gun barrels, oil tanks, and Evaporation Pits on Plaintiffs' lands so that said fences are capable of excluding livestock and wildlife;

D.     Issue a permanent injunction prohibiting Somont from discharging Produced Water onto Plaintiffs' property outside the boundaries of its Evaporation Pits permitted to hold such water while it is disposed of through evaporation;

E.     For an award of monetary damages in an amount to be determined at jury trial for all past damages caused by Somont's removal of the fences from

around its evaporation pits and resulting from Somont's past and ongoing discharge of Produced Water onto Plaintiffs' lands;

F.     For an award of monetary damages in an amount to be determined at jury trial to compensate Plaintiffs for their parasitic emotional distress resulting from the ongoing damage Somont has caused to their real property;

G.     For Plaintiffs' attorneys' fees and costs associated with bringing this action; and

H.     For such other and further relief as may be necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by jury.

Respectfully submitted this 24th day of April, 2025.

Lund Law, PLLC


By:     _/s/ Peter B. Taylor_____
   Peter B. Taylor



Anna Aronow - Proven Liability in Stene Suit

Swayze- 92 Acres Impacted

Somont Bruins- 8 Acres







